UNITED STATES v. AMERICAN CAN CO. et al.

(District Court, D. Maryland. July 7, 1916.)

Monopolies ⊚⟶26(1)—Suit for Dissolution—Decree.

Although a corporation has been adjudged in its inception to have been an unlawful combination in restraint of interstate trade and to have committed unlawful acts, whether a dissolution will be decreed rests in the discretion of the court; and where the unlawful acts have ceased, and in the judgment of the court the public interest will be best served thereby, the corporation will be permitted to remain intact and to continue its business, the court retaining the bill as a restraint upon its future operations.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 17; Dec. Dig. ⊚⟶26(1).]

In Equity. Suit by the United States against the American Can Company and others. Decree considered.

G. Carroll Todd, Asst. Atty. Gen., and Henry E. Colton, Sp. Asst. Atty. Gen., for the United States.

John Barton Payne, of Chicago, Ill., George R. Willis, of Baltimore, Md., and Thomas M. Day, of New York City, for defendants.

ROSE, District Judge. Shall the defendant be dissolved? is the only question in which any of the parties are interested. On the record the government may be technically entitled to other relief, but it would be of no practical value, if given, and no request for it has been made. For similar reasons, none of the defendants still before the court have thought it worth while to insist upon their separate defenses. Upon the question at issue the opinion heretofore handed down said:

"Under the circumstances, would it not be better simply to retain the bill, without at present decreeing a dissolution, but reserving the right to do so whenever, if ever, it shall be made to appear to the court that the size and power of the defendant, brought about as they originally were, are being used to the injury of the public, or whenever such size and power, without being intentionally so used, have given to the defendant a dominance and control over the industry, or some portion of it, so great as to make dissolution or other restraining decree of the court expedient? * * * I shall take the course indicated, unless one or the other of the parties insist on my entering such a final decree as will enable them to seek at once a review by a higher tribunal. If either of them does, I am not prepared now to say that they will not be within their rights, and that it will not be my duty to do what they ask. That question is reserved until the occasion for deciding it shall arise." 230 Fed. 859.°

The defendant was willing to accept the court's suggestion, provided the government would do likewise; but the law officers of the latter felt that, in view of the importance of the issues involved, the case should be carried to the court of last resort. The government has, accordingly, moved for a decree of dissolution. The defendant has countered with a motion for an unqualified dismissal, or, in the alternative, for a dismissal without prejudice. For the reasons stated in the original opinion, defendant's motions will be denied.

In passing upon the government's contention, little will be added to that which has already been said. Jurisdiction of a court of equity is remedial, not punitive. A dissolution may not be decreed, unless there

⊚⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

is reason to believe that more good than harm will come of it. As a matter of course, in weighing the probabilities for good or evil, the chancellor must put aside any individual opinion he may have as to whether the community gains or loses by unlimited competition. The Anti-Trust Acts voice the will of Congress that the competitive régime shall be maintained. In contemplation of the law, any restraint of competition unlawfully brought about does harm. It is the duty of the courts to give effect to the legislative will, but it is equally their duty so to shape their decrees as to bring about the result desired by Congress with the least possible waste of anybody's time or of anybody's money.

The government asserts that, because of defendant's size and power, the checks and balances imposed by free and unrestrained competition do not limit its operation to anything like the extent they would if it were smaller or weaker, and that, if it be broken up into five or six separate and independent concerns, such checks and balances will come into play. In the long run such would doubtless be the outcome. The form of dissolution decreed might be such that the hoped-for end would be attained in a shorter time than apparently will be required in the oil and in the tobacco trades. Yet it is by no means certain, nor even perhaps probable, that between the various units into which the defendant might be divided sharp competition would at once spring up. The officers and managers of the new concerns would at first be men, most, if not all, of whom had been trained in the service of the defendant, and who in that service had acquired more or less uniform habits of mind and ways of looking at the problems of the business. It is likely that for a period greater or less in duration they would be discinclined to depart from the paths in which they had been used to tread. The mass of details with which such a dissolution would require them to deal would for some time absorb most of their energies of mind and body. A dissolution, if really thorough-going and radical, would necessarily cause a good deal of loss, and for a while entail unusual expenditures of many kinds. For the time being the power of any of the concerns to compete in ways advantageous to the consuming public would be largely curtailed.

Such considerations are important in themselves, but they might be held immaterial to the question in hand, if any one of a number of other conditions existed, viz.: If the defendant was using its power, prestige, or resources to deal unfairly or oppressively with its competitors or with the public, or if the maximum prices which it could hope to obtain for its wares were not limited within a rather narrow range by the actual competition to which it is exposed, and still more by the potential competition which a few months of higher prices, under the conditions prevailing in the industry, would make real and dangerous, or if there was no probability that within a reasonable time, and without the aid of judicial action, the competitive régime would again establish itself. But such is not the case. At no period after the first year or two following defendant's organization has the unfair or oppressive treatment of its competitors been a part of its policy. It is true that it concealed or denied its ownership of a couple of its subsidiaries. Nothing can be said even in excuse, much less in justification, of what it did in that way. Nevertheless those actions

appear to have been exceptional, rather than part of any general scheme.

Its bargain with the Tin Plate Company may have operated unfairly to its competitors, and for a time probably did. The growth of independent manufacturers of tin plate, and various changes in the conditions of the industry, have in recent years made that advantage of little moment. The record seems to show that a number of years before the filing of the petition in this case the defendant made up its mind that it would not give its competitors or the public cause for complaint against it, and that it has since lived up to that resolution.

The defendant does fix the prices at which an overwhelming majority of the packers' cans are sold. It is the most potent factor in determining the price at which all of them are disposed of, but its power to do either depends upon its making a fairly accurate estimate of the market conditions. Any considerable increase in prices would promptly bring a host of new competitors into the field. It is neither certain nor probable that it will be able to maintain its relative position in the trade. The business and resources of some of its competitors have been steadily growing, both absolutely and relatively. A continuation of the present conditions may well result in the development of some of them until competition will again control the market. It is by no means unlikely that this result may be attained even earlier than the public could begin to enjoy the benefits which the government hopes a dissolution would ultimately confer.

If, as has been suggested, jurisdiction over the case is retained, the assurance that the defendant will not resort to unfair practices will be well-nigh absolute. Under such conditions it will not be likely to accept a competitor's offer to sell out to it, and thereby add to that size and power which, acquired as they were, in defiance of law, the court must necessarily view with suspicion and distrust. Under such circumstances the passing of a decree for dissolution seems both unnecessary and unwise. The insistence that the court has no choice in the matter assumes that equitable modes of relief are fixed and rigid. That is not so. The glory of chancery has always been that it could mold its remedies to meet the conditions with which it has to deal. In this case it appears probable that all potential restraints upon free competition now imposed by the size and power of defendant will pass away as speedily without as with dissolution, and that dissolution will cause far more loss and business disturbance than will attend the gradual re-establishment of competitive conditions by the play of economic forces. If so, no dissolution should now be decreed.

It is, of course, possible that these forecasts of the future may not be realized. In that event, the retention of jurisdiction will enable the government promptly and cheaply to compel a dissolution whenever anything which defendant may hereafter do, or whenever anything which may hereafter happen makes such action necessary or expedient.

It is however, said that what the court has suggested it may not do, whatever else may be within its power. It is not denied that the course mapped out is well within the jurisdiction of the chancellor. The right to make decrees which are indistinguishable in principle

from the one proposed has been recognized and exercised, but it would be of little moment if it had not been. The creative faculty of equity still continues to be energetic and productive. Bispham's Equity (9th Ed.) § 583.

Conceding all this to be true, it is nevertheless asserted that no such decree could be properly made by a District Court of the United States. The argument is short. Such a decree is not final. No appeal will lie from any decree which is not. The court of first instance may not take away the right of review. There can be no question of the absolute soundness of the third of these propositions, and the second, correctly understood, is equally unquestionable; but the rule that an aggrieved party, before he may appeal, must await the entering of a final decree, was never intended to put limitations upon the power of a court of equity to give the relief most appropriate to the case before it. What it would be lawful for a court of chancery to do if there was no such rule as to appeals remains lawful, although such rule exists. The fact is that in this case the decree to be made would be final. The case has been brought regularly to hearing. Upon the record so made, the government says it is entitled to a decree of dissolution. The court upon that record denies the relief for which the government asks, which is a final determination of the issue, so far as it depends upon the record as it stands.

No one would question that a dismissal of the petition, albeit without prejudice, would be a final decree, from which an appeal would lie. Why should a mere retention of the petition make any difference? Dissolution is equally denied on the case as made. It is true that if, from something which has occurred since the filing of the petition, and which is subsequently brought to the attention of the court, a decree for dissolution becomes proper, it may then be made, precisely as the same result would follow if the petition had been dismissed without prejudice. The only difference is that in the latter case everybody would be put to far greater cost and trouble to reach the same end.

A decree will therefore be entered adjudging that while the defendant was organized to monopolize interstate trade in cans, and to attain that object such trade was unlawfully restrained by it and by those who formed it and directed its earlier activities, and that some of those individuals still participate in its management and control, still, upon all the facts and circumstances of the case, as those facts and circumstances are set forth and found in the opinion heretofore filed, the request or demand of the government for a decree of dissolution is denied, without prejudice to a renewal of such demand or the seeking of other appropriate relief, if it shall hereafter be made to appear to the court from other facts occurring subsequent to the filing of the petition in this cause that the size and power of the defendant, brought about as they originally were, are being used to the injury of the public, or whenever such size and power, without being intentionally so used, have given to the defendant a dominance or control over the industry, or some portion of it, so great as to make dissolution or other restraining decree of the court expedient.